UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAYMOND LEE YATES,

    Plaintiff,                                          Hon. Janet T. Neff

v.                                                         Case No. 1:09-CV-934

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
    _____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

# **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 54 years of age as of the date his insured status expired. (Tr. 20). He successfully completed high school and worked previously as a truck driver, security guard, dry wall hanger, and forklift operator. (Tr. 20, 149, 171-75).

Plaintiff applied for benefits on June 13, 2005, alleging that he had been disabled since June 1, 2000, due to nerve and back problems, arthritis, and hearing loss. (Tr. 135-37, 148). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). Plaintiff appeared before ALJ Russell Barone, who denied Plaintiff's claim. (Tr. 25-31). This decision was subsequently vacated, however, because Plaintiff did not timely receive a copy of this determination. (Tr. 24).

On September 18, 2008, Plaintiff appeared before ALJ William King, with testimony being offered by Plaintiff and vocational expert, Paul Delmar. (Tr. 627-75). In a written decision dated March 5, 2009, the ALJ determined that Plaintiff failed to establish that he was disabled prior to the expiration of his insured status. (Tr. 13-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently initiated this pro se[1] appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

---

[1] Plaintiff was represented by legal counsel at the administrative hearing below. (Tr. 13).

Plaintiff's insured status expired on December 31, 2002. (Tr. 14). To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

In May, 2005, Plaintiff submitted an application for Supplemental Security Insurance (SSI) benefits which was approved. (Tr. 13). In January 2006, the Veterans Administration also determined that Plaintiff was twenty percent disabled effective March 30, 2005. (Tr. 609-23).

## **RELEVANT MEDICAL HISTORY**

X-rays of Plaintiff's lumbosacral spine, taken on March 21, 1994, revealed "early arthritic changes" at L4, L5, and S1. (Tr. 504). There was "minimal" joint space narrowing, however, and the height of the vertebral bodies was "well maintained." (Tr. 504).

On July 22, 1996, Plaintiff participated in a neurosurgery examination. (Tr. 499). Plaintiff reported earlier that year he began experiencing episodes of right hemifacial spasm. (Tr. 499). An MRI examination of Plaintiff's brain revealed evidence of a "small" infarct on the left, but "nothing on the right to explain his spasm." (Tr. 499). Specifically, the doctor noted that he "could not identify any enlarged vascular structures around the facial nerve." (Tr. 499). The MRI also revealed no evidence of "pathologic intracranial enhancement" or "pathologic extraaxial fluid collections." (Tr. 344). The ventrical system was also "normal." (Tr. 344). Plaintiff was prescribed Tegretol after which he reported that his "major spasm episodes have ceased almost completely." (Tr. 499). The doctor informed Plaintiff that he could undergo a "microvascular decompression" procedure to treat his condition. (Tr. 499). The doctor, however, noting "the apparent response of

4

his spasm to Tegretol and the relative lack of disability the minor twitching causes," recommended to Plaintiff that he not undergo the procedure. (Tr. 499).

On May 20, 2002, Plaintiff was examined by Dr. Rhodes. (Tr. 334). Plaintiff reported that he was experiencing pain in his right shoulder and numbness in his right index finger. (Tr. 334). Plaintiff also reported that he was presently employed as "a drywall hanger." (Tr. 334). An examination of Plaintiff's shoulder revealed "tenderness," but Plaintiff exhibited full range of motion. (Tr. 334). An examination of Plaintiff's right wrist revealed tenderness and a positive Tinel's test. (Tr. 334). X-rays of Plaintiff's right shoulder revealed "mild acromioclavicular and glenohumeral change." (Tr. 356). X-rays of Plaintiff's cervical spine were "normal." (Tr. 356). Plaintiff was instructed to use hot packs and continue his medication. (Tr. 334). No work or functional limitations were identified or imposed. (Tr. 334).

On November 1, 2003, Plaintiff reported to the emergency room complaining of chest and abdominal pain. (Tr. 249). Plaintiff participated in an electrocardiogram, the results of which were "normal." (Tr. 250). X-rays of Plaintiff's chest were "unremarkable." (Tr. 250). Plaintiff "had a complete blood count which was normal." (Tr. 249). A "chem profile was normal except a glucose of 126." (Tr. 249-50). A cardiac enzyme test was "negative.'" (Tr. 250). The doctor concluded that Plaintiff was likely experiencing costochondritis.[2] (Tr. 250). Plaintiff was discharged from the emergency room "without any obvious distress." (Tr. 250).

X-rays of Plaintiff's right knee, taken on July 14, 2004, revealed degenerative changes, but no evidence of fracture, dislocation, or joint space or soft tissue abnormality. (Tr. 271).

---

[2] Costochondritis is an inflammation of the cartilage that connects a rib to the breastbone (sternum). *See* Costochondritis, available at: http://www.mayoclinic.com/health/costochondritis/DS00626 (last visited on September 20, 2010).

X-rays of Plaintiff's chest, taken September 13, 2004, revealed degenerative changes of the dorsal spine, but no evidence of acute disease. (Tr. 302). X-rays of Plaintiff's hips, taken the same day, revealed degenerative changes of the lower lumbar spine. (Tr. 301). On December 30, 2004, Plaintiff reported to his doctor that he was presently employed as "a drywaller." (Tr. 315).

Following a January 31, 2005 examination, Plaintiff was diagnosed with bilateral sensorineural hearing loss,[3] for which he obtained hearing aids. (Tr. 279-82). An April 4, 2005 examination of Plaintiff's ears revealed that the canals were "wide open" and "clean" and the tympanic membranes were "intact and normal." (Tr. 283). Plaintiff reported that he began using hearing aids "a couple weeks ago and has been satisfied with it." (Tr. 275). He stated that he was receiving "good benefit" from the hearing aids. (Tr. 321).

On August 1, 2005, Plaintiff participated in an motor and sensory nerve conduction examination, the results of which revealed that he was suffering from "mild right chronic lateral epicondylitis" with "no electrodiagnostic study evidence of carpal tunnel syndrome or median neuropathy." (Tr. 571-72). X-rays of Plaintiff's lumbosacral spine, taken on September 13, 2005, revealed degenerative disc disease at L4-5 and L5-S1. (Tr. 391-92). X-rays of Plaintiff's hips, taken the same day, revealed "moderate" osteoarthritis. (Tr. 392).

---

[3] Sensorineural hearing loss (also referred to as nerve deafness) occurs when the nerves of the inner ear become damaged and do not properly transmit their signals to the brain. *See* Hearing Loss, available at: http://www.ucsfhealth.org/adult/medical_services/audio/hearingloss/conditions/hearingloss/signs.html (last visited on September 20, 2010).

On October 10, 2005, Kelly Distefano[4] completed a report concerning Plaintiff's functional abilities. (Tr. 336-43). The doctor reported that Plaintiff could occasionally lift less than 10 pounds. (Tr. 337). She reported that during an 8-hour workday, Plaintiff could sit for less than 6 hours and stand/walk for less than 2 hours. (Tr. 337). The doctor also reported that Plaintiff's ability to push/pull, reach, and perform handling or fingering operations was "limited." (Tr. 339). Dr. Distefano did not, however, indicate the date on which Plaintiff first experienced such limitations. (Tr. 336-43).

X-rays of Plaintiff's lumbar spine, taken on October 14, 2005, revealed "marked" degenerative changes at L4-5 and L5-S1. (Tr. 351-52).

On May 10, 2006, Plaintiff reported to the emergency room after experiencing "a heavy feeling in his chest." (Tr. 442). The doctor also observed that Plaintiff "hangs drywall occasionally, so he is pretty active." (Tr. 442). The results of an electrocardiogram were "normal" and x-rays of Plaintiff's chest revealed no evidence of abnormality. (Tr. 446). A CT scan of Plaintiff's chest revealed: (1) no evidence of pulmonary emboli; (2) "minimal" right lower lobe scarring; (3) thoracic spondylosis; and (4) atherosclerotic changes of the aorta. (Tr. 458).

On June 9, 2006, Plaintiff participated in an ophthalmology examination, the results of which revealed: (1) "diabetes[5] without retinopathy;" (2) "ptosis secondary to CN III palsy without pupil or EOM involvement;" (3) "physiological cupping OU;" and (4) "refractive error with

---

[4] It is not apparent from this document whether Ms. Distefano is a medical doctor or a physician's assistant. The ALJ found that Ms. Distefano was a physician's assistant, a determination which Plaintiff does not contest. The Court notes, however, that there is arguably conflicting evidence in the record regarding Ms. Distefano's professional status. (Tr. 332, 335, 453-57, 466). Rather than attempt to resolve any potential dispute as to Ms. Distefano's professional status, the Court will err in Plaintiff's favor on this matter and has considered Ms. Distefano to be a medical doctor.

[5] The doctor noted that Plaintiff was diagnosed with diabetes in 2005. (Tr. 415).

presbyopia." (Tr. 415-19). That same day, Plaintiff also participated in several other examinations. X-rays of his right knee revealed "moderately advanced osteoarthritis." (Tr. 389). X-rays of his left knee revealed "minimal arthritis." (Tr. 391). A CT scan of his lumbar spine revealed degenerative disc disease at L4-5 and L5-S1. (Tr. 390).

X-rays of Plaintiff's chest, taken on March 1, 2007, revealed thoracic spondylosis, but no evidence of pulmonary infiltrates or pleural effusions. (Tr. 489).

On March 7, 2007, Dr. Distefano and Dr. A. Stagg completed an assessment of Plaintiff's ability to perform work-related activities. (Tr. 467-70). The doctors reported that during an 8-hour workday, Plaintiff can sit for 2 hours, stand for 30 minutes, and walk for 30 minutes. (Tr. 467). The doctors reported that Plaintiff also required a sit-stand option. (Tr. 467). The doctors reported that Plaintiff can never lift or carry even 5 pounds. (Tr. 467). The doctors reported that Plaintiff can never stoop, squat, kneel, climb ramps/stairs, crouch, crawl, or reach above shoulder level. (Tr. 468). On the portion of the form that stated, "Please identify supportive medical findings and/or attach pertinent clinical notes or test results," the doctors stated "pt states 2001." (Tr. 467).

## **ANALYSIS OF THE ALJ'S DECISION**

The ALJ determined that as of the date his insured status expired, Plaintiff suffered from chronic lower back pain, a severe impairment that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17-18). The ALJ concluded that through the date Plaintiff was last insured he retained the ability to perform his past relevant work as a security guard. (Tr. 18-20). The ALJ further determined that even if Plaintiff

8

was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 20-21). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[6] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

---

[6]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date his insured status expired, Plaintiff retained the capacity to perform work subject to the following limitations: (1) he could lift and carry 30 pounds occasionally and 20 pounds frequently; (2) during an 8-hour workday he could stand/walk for 6 hours; (3) he required a sit/stand option; (4) he could occasionally bend and climb stairs; and (5) he could not stoop. (Tr. 18). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

At the administrative hearing, the ALJ questioned a vocational expert concerning Plaintiff's ability to perform work consistent with his RFC. The vocational expert testified that Plaintiff, consistent with his RFC, would have been able to perform his past relevant work as a security guard. (Tr. 669-70). The vocational expert also testified that there existed approximately 26,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 668-71). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006).

At the outset, it must be noted that because Plaintiff is seeking DIB benefits, he must establish that he was disabled prior to the expiration of his insured status - December 31, 2002. In his pro se pleadings, Plaintiff repeatedly discusses his *current* impairments and the extent to which he is *presently* impaired. The Court does not question Plaintiff's assertion that he is presently disabled. Considering that Plaintiff was subsequently awarded SSI benefits, Plaintiff appears to have demonstrated that he is *presently* disabled. Nevertheless, to prevail on the current claim, Plaintiff must establish that he was disabled prior to December 31, 2002.

Plaintiff also alleges various errors regarding the initial decision by ALJ Barone. That decision is not presently relevant, however. As previously noted, the decision by ALJ Barone was vacated and it is the decision by ALJ King that represents the Commissioner's final decision in this matter and which is presently under review.

a. The ALJ Properly Evaluated Plaintiff's Impairments

As noted above, the ALJ determined, at step two of the sequential analysis, that Plaintiff suffered from a severe impairment. Plaintiff appears to assert that the ALJ erred, however, by failing to recognize that he also suffered from severe hearing and vision impairments prior to the expiration of his insured status.

A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Basic work activities include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities

11

for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); *see also*, *Despins v. Commissioner of Social Security*, 257 Fed. Appx. 923, 929 n.2 (6th Cir., Dec. 14, 2007).

An impairment "can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988)); *see also*, *Williamson v. Secretary of Health and Human Services*, 796 F.2d 146, 151 (6th Cir. 1986) (an impairment is less than severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience").

While the record reveals that Plaintiff presently experiences vision and hearing impairments, the record likewise supports the ALJ's conclusion that Plaintiff, prior to the expiration of his insured status, did not suffer from severe hearing or vision impairments. Moreover, even if the ALJ's conclusion in this regard is in error, the result is the same.

At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health and Human Services*, 837 F.2d 240, 244 (6th

Cir. 1987); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir., Feb. 22, 2008) (citing *Maziarz*, 837 F.2d at 244); *Fisk v. Astrue*, 253 Fed. Appx. 580, 583-84 (6th Cir., Nov. 9, 2007) (same).

Here, the ALJ determined that Plaintiff suffered from a severe impairment at step two of the sequential analysis and continued with the remaining steps thereof, considering in detail the evidence of record. Thus, even if the Court assumes that the ALJ erred in failing to find that Plaintiff suffered from severe hearing or vision impairments prior to the expiration of his insured status, such does not call into question the substantiality of the evidence supporting the ALJ's decision. *See Heston v. Commissioner of Social Security*, 245 F.3d 528, 535-36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala*, 1993 WL 361792 at *7 (6th Cir., Sep. 16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture...'").

b. The ALJ Properly Assessed the Medical Evidence

As noted above, Dr. Distefano and Dr. Stagg expressed opinions concerning Plaintiff's ability to perform work-related activities. The ALJ discounted these opinions. Plaintiff asserts that the ALJ failed to accord sufficient weight to these particular opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, "give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Wilson*, 378 F.3d at 544. In articulating such reasons, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also*, *Wilson*, 378

F.3d at 544. The ALJ is not required, however, to explicitly discuss each of these factors. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Instead, the record must reflect that the ALJ considered those factors relevant to his assessment. *See Oldham*, 509 F.3d at 1258; *Undheim*, 214 Fed. Appx. at 450.

On October 10, 2005, Dr. Distefano reported that Plaintiff could occasionally lift less than 10 pounds. She also reported that during an 8-hour workday, Plaintiff could sit for less than 6 hours and stand/walk for less than 2 hours. Such limitations are far greater than those recognized by the ALJ in his RFC determination. The ALJ discounted these opinions, noting that Dr. Distefano never identified any "musculoskeletal condition" from which Plaintiff allegedly suffered. The ALJ also observed that Dr. Distefano, who expressed this particular opinion almost three years after the expiration of Plaintiff's insured status, "fail[ed] to designate the time period assessed." Furthermore, to the extent that Dr. Distefano's opinion referred to the time period prior to the expiration of Plaintiff's insured status, such enjoys no support in the medical record.

On March 7, 2007, Dr. Distefano and Dr. Stagg offered an opinion regarding Plaintiff's ability to perform work-related activities. They reported that Plaintiff can never lift or carry even 5 pounds. They reported that during an 8-hour workday, Plaintiff can sit for 2 hours, stand for 30 minutes, and walk for 30 minutes. They reported that Plaintiff can never stoop, squat, kneel, climb ramps/stairs, crouch, crawl, or reach above shoulder level. The ALJ rejected this opinion, noting that with respect to the time period prior to the expiration of Plaintiff's insured status, such was not supported by the medical record including their own treatment notes. Also as previously noted, when requested to "identify supportive medical findings and/or attach pertinent clinical notes or test results" in support of their opinions, Dr. Distefano and Dr. Stagg simply stated,

15

"pt states 2001." The ALJ found that this statement failed to support the opinion that Plaintiff experienced these alleged limitations prior to the expiration of his insured status.

In sum, there exists substantial evidence supporting the ALJ's decision to accord little weight to these particular opinions.

Finally, while the Court must read Plaintiff's pro se pleadings indulgently, it cannot act as counsel for Plaintiff and attribute to Plaintiff arguments which do not find their genesis in Plaintiff's pleadings. Nevertheless, the Court has thoroughly reviewed the record to determine whether the ALJ's decision suffers from any obvious defects or deficiencies. This review revealed nothing which calls into question the ALJ's decision making process, the legal standards he applied, or the substantiality of the evidence in support of his decision. Accordingly, while the Court does not question Plaintiff's assertion that he is *presently* disabled (and has likely been so for some time), the ALJ's determination that Plaintiff was not disabled prior to the expiration of his insured status is supported by substantial evidence.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: October 29, 2010

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge